Jon A. Tostrud (SBN 199502)
**TOSTRUD LAW GROUP, P.C.**
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone: (310) 278-2600
Facsimile (310) 278-2640
Email: jtostrud@tostrudlaw.com

*Attorneys for Plaintiff Amy Holzman*

[Additional Counsel on signature page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY HOLZMAN, On Behalf of Herself and All Others Similarly Situated,<br><br>                          Plaintiff,<br>v.<br><br>INVENSENSE, INC., BEHROOZ ABDI, AMIT SHAH, JON OLSON, ERIC STANG, AMIR FAINTUCH, USAMA FAYYAD, EMIKO HIGASHI, YUNBEI YU, TDK CORPORATION, and TDK SENSOR SOLUTIONS CORPORATION,<br><br>                          Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by her undersigned attorneys, for this complaint against Defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.     This is a class action brought on behalf of the public stockholders of InvenSense Inc. ("InvenSense" or the "Company") against InvenSense and its Board of Directors (the "Board" or the "Individual Defendants"), to enjoin a proposed transaction announced on December 21,

- 1 -

2016 (the "Proposed Transaction"), pursuant to which InvenSense will be acquired by TDK Corporation ("Parent") and its wholly-owned subsidiary, TDK Sensor Solutions Corporation ("Merger Sub," and together with Parent, "TDK").

2. The Board caused InvenSense to enter into an agreement and plan of merger (the "Merger Agreement") on December 21, 2016. Pursuant to the terms of the Merger Agreement, common stockholders of InvenSense will receive $13.00 per share in cash.

3. Defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction on February 3, 2017.

4. Material Information is omitted from the Proxy Statement as to certain details pertaining to the Proposed Transaction. These omissions render the Proxy Statement false and misleading. Therefore, Defendants have violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act as the claims arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in and maintains offices within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of due process.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of occurred in this District.

## PARTIES

8. Plaintiff, a resident and citizen of Westchester County, State of New York, during all relevant times, has been an owner of InvenSense common stock.

9. Defendant InvenSense is a Delaware corporation and maintains its principal place of business at 1745 Technology Drive, Suite 200, San Jose, California 95110. InvenSense's common stock is traded on the New York Stock Exchange under the ticker symbol "INVN."

10. **Defendant Behrooz Abdi** ("Abdi") has served as a director of InvenSense since June 2011. Abdi was appointed as the Company's President and Chief Executive Officer ("CEO") in October 2012 according to the Company's Annual Proxy Statement filed with the SEC on Form DEF 14A on July 29, 2016 (the "2016 Proxy").

11. **Defendant Amit Shah** ("Shah") has served as a director of InvenSense since April 2004. Shah serves as Chairman of the Board and is Chairman of the Compensation Committee According to the 2016 Proxy.

12. **Defendant Jon Olson** ("Olson") has served as a director of InvenSense since October 2011. Olson is Chairman of the Audit Committee according to the 2016 Proxy.

13. **Defendant Eric Stang** ("Stang") has served as a director of InvenSense since September 2013. Stang is Chairman of the Nominating and Corporate Governance Committee and is a member of the Audit Committee according to the 2016 Proxy.

14. **Defendant Amir Faintuch** ("Faintuch") has served a director of InvenSense since October 2014. Faintuch is a member of the Nominating and Corporate Governance Committee according to the 2016 Proxy.

15. **Defendant Usama Fayyad** ("Fayyad") has served as a director of InvenSense since January 2015. Fayyad is a member of the Compensation Committee according to the 2016 Proxy.

16. **Defendant Emiko Higashi** ("Higashi") has served as a director of InvenSense since October 2014. Higashi is a member of the Audit Committee according to the 2016 Proxy.

17. **Defendant Yunbein Yu** ("Yu") has served as a director of InvenSense since March 2008. Yu is a member of the Compensation Committee according to the 2016 Proxy.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants.

19. Defendant Parent is a company organized under the laws of Japan with its corporate headquarters located at Shibaura Renasite Tower, 3-9-1 Shibaura, Minato-ku, Tokyo 108-0023 Japan.

20. Defendant Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Parent.

**CLASS ACTION ALLEGATIONS**

21.     Plaintiff brings this action as a class action on behalf of herself and the other public stockholders of InvenSense (the "Class"). Excluded from the Class are all Defendants and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

22.     This action is maintainable as a class action.

23.     The Class is so numerous that joinder of all members is impracticable. As of January 23, 2017, there were approximately 94,581,290 shares of InvenSense common stock outstanding, held by hundreds, if not thousands, of individuals and entities in various parts of the world.

24.     Questions of law and fact are common to the Class, including, among other things, whether Defendants violated the 1934 Act and whether Defendants will irreparably harm plaintiff and the other members of the Class if their conduct continues.

25.     Plaintiff has retained competent counsel experienced in litigation of this nature and is prepared to pursue the matter to conclusion. Plaintiff's claims are typical, and plaintiff has the same interests to protect, as the other members of the Class. Therefore, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying decisions that could establish inconsistent standards of conduct for Defendants, or decisions that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the decisions or would substantially impair or impede those non-party Class members' ability to protect their interests.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Accordingly, final injunctive relief on behalf of the Class is appropriate.

## FACTS

A.     **Information on the Company and the Proposed Transaction**

28.     InvenSense is the world's leading provider of micro electrical mechanical systems ("MEMS") sensor platforms and was founded in 2003.

29.     The Company's products use MEMS sensors, such as accelerometers, gyroscopes, compasses, and microphones and combine them with proprietary firmware and algorithms that

process, synthesize, and calibrate the output of sensors, to maximize the performance and accuracy of the sensors.

30.     The Company's motion tracking, audio and location platforms, and services are part of many of the world's largest brands including smartphones, tablets, wearables, drones, gaming devices, automotive products, remote controls for smart TVs and the internet of things.

31.     On November 3, 2016, the Company issued a press release reporting its financial results for the second quarter of fiscal year 2017.  In the press release, the Company reported that net revenue for the second quarter was $79.8 million, up 32 percent from $60.6 million in the first quarter of fiscal year 2017.  Defendant Abdi, President and CEO of the Company, commented:

> The InvenSense team delivered solid results in the second fiscal quarter. We are encouraged that our R&D investments are beginning to pay off with new design wins which we anticipate will allow us to penetrate new markets[.] . . . While the consumer and mobile markets were and remain soft, we believe this design win activity will position us for strong top line growth in fiscal 2018 as we strive to diversify our business.

32.     Even though the Company was positioned for "strong top line growth in fiscal 2018," the Board nonetheless caused the Company to enter into the Merger Agreement, pursuant to which InvenSense will be acquired for inadequate consideration and with material information not disclosed to the shareholders.

33.     The Individual Defendants' conduct in agreeing to a "no solicitation" provision in the Merger Agreement makes it likely that no other entity will emerge with a competing proposal because that provision prohibits the Individual Defendants from soliciting competing proposals and restricts their ability to communicate and negotiate with potential buyers who want to submit or have submitted unsolicited competing proposals. Section 6.03(a) of the Merger Agreement states, in relevant part:

> (a) General Prohibitions. Neither the Company nor any of the Company Subsidiaries shall, nor shall the Company or any of the Company Subsidiaries authorize or permit any of its or their Representatives to, directly or indirectly, (i solicit, initiate or take any action to knowingly facilitate or knowingly encourage the making, submission or announcement of any inquiry, proposal or offer (including any inquiry, proposal or offer to the Company's stockholders) which constitutes or would be reasonably expected to lead to any Acquisition Proposal (ii) enter into or participate in any discussions or negotiations with, furnish any

information relating to the Company or any of the Company Subsidiaries or afford access to the business, properties, assets, books or records of the Company or any of the Company Subsidiaries to, otherwise cooperate in any way with, or knowingly assist, participate in, facilitate or encourage any effort by any Third Party that is reasonably expected to make, or is otherwise seeking to make, or has made, an Acquisition Proposal (other than, solely in response to an unsolicited inquiry, to refer the inquiring Third Party to this Section 6.03 and to limit its conversation or other communication exclusively to such referral), (iii) (A) publicly propose to, or otherwise change, withhold, withdraw, qualify or modify, in a manner adverse to Parent or Merger Subsidiary, the Company Board Recommendation, (B) fail to include the Company Board Recommendation in the Proxy Statement, when mailed, (C) adopt, approve or recommend to stockholders of the Company, or resolve to or publicly propose or announce its intention to adopt, approve or recommend to stockholders of the Company, an Acquisition Proposal or any transaction pursuant to which a Third Party would become an "interested stockholder" under Section 203 of Delaware Law, (D) if a tender offer or exchange offer that constitutes an Acquisition Proposal is commenced, fail to publicly recommend against acceptance of such tender offer or exchange offer by the Company's stockholders within ten Business Days after the commencement thereof or (E) fail to publicly reaffirm the Company Board Recommendation following any Acquisition Proposal having been publicly made, proposed or communicated (and not publicly withdrawn) within 10 Business Days after Parent so requests in writing (*provided* that Parent shall not be entitled to request such reaffirmation more than one time with respect to an Acquisition Proposal (provided that any modification to the financial or other material terms of such Acquisition Proposal shall constitute a new Acquisition Proposal for purposes of the foregoing (any of the foregoing in this clause (iii), an "Adverse Recommendation Change"), (iv) fail to enforce or grant any waiver or release under any standstill or similar agreement with respect to any class of equity securities of the Company or any of the Company Subsidiaries, provided that, with respect to any Third Party that was not invited by the Company to submit an indication of interest or bid to acquire the Company during the period between June 1, 2016 and the date of this Agreement, if the Company's Board of Directors determines in good faith, after consultation with the Company's outside legal counsel, that the failure to take such action would be inconsistent with the directors' fiduciary duties under Applicable Law, the Company may waive any such standstill provision applicable to such Third Party solely to the extent necessary to permit such Third Party to make a confidential Acquisition Proposal to the Company's Board of Directors, or (v) approve, adopt, recommend or enter into, or propose to approve adopt, recommend or enter into any agreement in principle, letter of intent, term sheet, merger agreement, acquisition agreement, option agreement or other similar instrument relating to a Acquisition Proposal (whether binding or nonbinding). It is agreed that any material violation of the restrictions on the Company set forth in this Section 6.03 by any Representative of the Company or any of the Company Subsidiaries shall be a breach of this Section by the Company.

34. In addition, the Company must promptly report to TDK if any competing proposals or inquiries are received from other parties, including, *inter alia*, the material terms and conditions of the proposal and the identity of the party making the proposal. Section 6.03(c) of the Merger Agreement states:

> (c) Required Notices. The Board of Directors of the Company shall not take any of the actions referred to in Section 6.03(b) unless the Company shall have delivered to Parent a prior written notice advising Parent that it intends to take such action, the Company has advised Parent on a prompt basis of the status and terms of any discussions and negotiations with the Third Party, and the Company has notified Parent promptly (but in no event later than the earliest to occur of (i) one Business Day and (ii) 48 hours) after receipt by the Company (or any of its Representatives) of any request for information relating to the Company or any of the Company Subsidiaries or for access to the business, properties, assets, books or records of the Company or any of the Company Subsidiaries by any Third Party that has made, or that is reasonably likely to make, an Acquisition Proposal. The Company shall provide such notice orally and in writing (email shall be sufficient if sent in accordance with all of the relevant provisions of Section 11.01 hereof) and shall identify the Third Party making, and the financial and other material terms and conditions (including the financing thereof) of, any such Acquisition Proposal, indication or request. The Company shall keep Parent fully informed, on a prompt basis (and in any event no later than the earliest to occur of (i) one Business Day and (ii) 48 hours), of the status and material terms of any such Acquisition Proposal, indication or request. The Company shall promptly (but in no event later than the earliest to occur of (i) one Business Day and (ii) 48 hours) after receipt provide to Parent copies of all correspondence and other written materials sent or provided to the Company, any of the Company Subsidiaries or any of their Representatives after the date of this Agreement by any Third Party that has made, or that is reasonably likely to make, an Acquisition Proposal that describes any financial or other material terms or conditions of any Acquisition Proposal (as well as written summaries of any additional or modified material terms or conditions conveyed orally to the Company, to the extent not already provided to Parent within the earliest to occur of (i) one Business Day and (ii) 48 hours after receipt by the Company, any of the Company Subsidiaries or any of their Representatives). The Company shall provide to Parent prior to or substantially concurrently with the time it is provided or made available to such Third Party by the Company, any of the Company Subsidiaries or any of the their Representatives all correspondence and other written materials to any Third Party that, after the date of this Agreement, has made, or that is reasonably likely to make, an Acquisition Proposal that describes any financial or other material terms or conditions of any Acquisition Proposal (as well as written summaries of any additional or modified material terms or conditions conveyed orally by or on behalf of the Company, to the extent not already provided to Parent). Any amendment to the financial or other material

terms of any Acquisition Proposal will be deemed to be a new Acquisition Proposal for purposes of the Company's compliance with this Section 6.03(c).

35.     Further, the Merger Agreement also contains a restrictive "fiduciary out" provision which allows the Board to withdraw its approval of the Proposed Transaction only under limited circumstances, and grants TDK a "matching right" with respect to any "Superior Proposal" made to the Company.  Section 6.03(d) of the Merger Agreement provides:

> (d) "Last Look". Further, the Board of Directors of the Company shall not make an Adverse Recommendation Change (or terminate this Agreement pursuant to Section 10.01(d)(i)), unless (i) the Company notifies Parent (which notice, in and of itself, shall not constitute an Adverse Recommendation Change), in writing at least five Business Days before taking that action, of its intention to do so (such period, the "Negotiation Period"), including (A) in the case of an Adverse Recommendation Change to be made following receipt of a Superior Proposal, the most current version of the proposed agreements under which such Superior Proposal is proposed to be consummated (including any proposed merger agreement, acquisition agreement, option agreement, voting agreement or other similar instrument relating to such Superior Proposal and a copy of any financing commitments relating thereto (or, in each case, if not provided in writing to the Company, a written summary of the financial and other terms thereof)) and the identity of the Third Party making the Acquisition Proposal, or (B) in the case of an Adverse Recommendation Change to be made in response to an Intervening Event, a reasonably detailed description of the reasons for making such Adverse Recommendation Change, and (ii) following the end of the Negotiation Period, the Board of Directors of the Company shall have considered in good faith any revisions to the terms of this Agreement proposed in writing by Parent, and shall have determined, after consultation with its financial advisor and outside legal counsel, that Parent did not make, within the Negotiation Period, an offer that (A) in the case of an Adverse Recommendation Change to be made following receipt of a Superior Proposal, is at least as favorable to the stockholders of the Company a such Superior Proposal provided, that in the event there is any modification to the financial or other material terms of any such Superior Proposal (including any modification in the amount, form or mix of consideration proposed to be payable to the Company's stockholders pursuant to such Superior Proposal), the Company shall have provided to Parent a notice of such modification and such Superior Proposal shall be deemed a new Superior Proposal to which the requirements of this Section 6.03(d) shall apply; provided, further that with respect to such new Superior Proposal, the Negotiation Period shall be deemed to be a three Business Day period rather than a five Business Day period (except that in no event will the Negotiation Period expire earlier than any Negotiation Period then in effect would have expired) or (B) in the case of an Adverse Recommendation Change to be made in response to an Intervening Event, obviates the need for such recommendation change.

36. The Merger Agreement also has a provision for a "termination fee" of $46.7 million, payable by the Company to TDK if the Company terminates the Merger Agreement.

37. The Individual Defendants have attempted to ensure that the Proposed Transaction is the only possible transaction and they have prevented other entities from making any successful competing offer for InvenSense by agreeing to all of the aforesaid terms.

38. Furthermore, the directors, executive officers, and certain stockholders of InvenSene entered into a voting agreement with Parent, pursuant to which they agreed to vote their shares in favor of the Proposed Transaction. Therefore, such shares are already committed to vote in favor of the Proposed Transaction.

**B.   The Merger Consideration is Inadequate and the Conflicting Interests of the Company's Officers and Directors**

39. The $13.00 per share merger consideration to be paid to Plaintiff and the Class in the Proposed Transaction is not adequate.

40. Upon information and belief, the intrinsic value of the Company is materially greater than the amount offered in the Proposed Transaction.

41. Furthermore, the amount offered in the Proposed Transaction does not adequately compensate the Company's shareholders for the valuable synergies that TDK will obtain as a result of the merger.

42. The financial analyses performed by the Company's own financial advisor, Qatalyst Partners LP ("Qatalyst Partners"), confirm the inadequacy of the merger consideration. For example, Qatalyst Partners' *Illustrative Discounted Cash Flow Analysis* yielded values for the Company's common stock as high as $19.63 per share.

43. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

44. Meanwhile, certain of the Company's officers and directors stand to receive substantial benefits as a result of the Proposed Transaction.

45. For example, the Company's officers are conflicted as they will retain their employment and financial benefits once the Proposed Transaction is consummated

46. Furthermore, Defendant Abdi will receive $7,872,751 as part of the Proposed Transaction, and the remainder of the Company's named executive officers will receive $12,813,145.

C. **The Proxy Statement is False and Misleading Because It Omits Material Information**

47. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

48. The Proxy Statement omits material information pertaining to the Company's financial projections and the financial analysis performed by the Company's financial advisor, Qatalyst Partners, in support of its "Fairness Opinion."

49. The Proxy Statement fails to disclose as to Qatalyst Partners' *Illustrative Discounted Cash Flow Analysis*, the following: (i) the terminal value of the Company; (ii) the estimated debt outstanding of the Company; (iii) the estimated cash balance of the Company; (iv) management's inputs and assumptions for projecting a dilution factor of approximately 19%; (v) the inputs and assumptions used to calculate the discount rate range of 11.0% to 17.5%; (vi) the estimated debt outstanding and estimated cash balance as of December 31, 2016, as provided by the Company's management; and (vii) the number of fully diluted shares of InvenSense common stock outstanding as of December 15, 2016, as provided by InvenSense's management.

50. Using the Fairness Opinion of Qatalyst Partners to encourage the shareholders to vote in favor of the Proposed Transaction while not disclosing the valuation methods used to arrive at that opinion, as well as the key inputs and range of ultimate values generated by those analyses, is misleading to shareholders.

51. Projected financial information is material because it provides shareholders with an ability to project the future financial performance of a company, and permits shareholders to more fully understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

52. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Reasons for the Merger"; (iii) "Recommendation of the Board of Directors";

(iv) "Certain Prospective Financial Information"; and (v) "Opinion of InvenSense's Financial Advisor."

53.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and InvenSense

54.     Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

55.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  The Company is liable as the issuer of these statements.

56.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

57.     The Individual Defendants were negligent in filing the Proxy Statement with these materially false and misleading statements.

58.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.  In addition, the details omitted from the Proxy Statement would significantly alter the total mix of information available to a reasonable shareholder considering how to vote on the Proposed Transaction.

59.     Plaintiff and the Company shareholders view the Proxy Statement with management's recommendations as essential information in causing them to vote in favor of the Proposed Transaction.

60.     Because of the foregoing conduct, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

61.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II
### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and TDK

62.     Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

63.     The Individual Defendants and TDK acted as controlling persons of InvenSense within the meaning of Section 20(a) of the 1934 Act for the reasons alleged above.

64.     By virtue of their positions as officers and/or directors of InvenSense and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

65.     Each of the Individual Defendants and TDK was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the misleading statements or cause them to be corrected.

66.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations set forth above, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly responsible for the making of the Proxy Statement.

67.     TDK also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

68.     Because of the foregoing conduct, the Individual Defendants and TDK violated Section 20(a) of the 1934 Act.

69. As set forth above, the Individual Defendants and TDK had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of Defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or granting rescission;

C.  Ordering the Individual Defendants to publish a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required and necessary to make the statements contained therein not misleading;

D.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.  Awarding costs of this action to Plaintiff, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: February 28, 2017

By: /s/ Jon A. Tostrud
Jon A. Tostrud, Esq.
**TOSTRUD LAW GROUP, P.C.**
1925 Century Park East, Ste. 2100
Los Angeles, CA. 90067
Telephone: (310) 278-2600
Facsimile: (310) 278-2640

Email: jtostrud@tostrudlaw.com

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South, 5th Floor
New York, NY 10016
Tel: (212) 983-1300
Fax: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Attorneys for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF

I, Amy Holzman ("Plaintiff") hereby retain Gainey McKenna & Egleston and such co-counsel as appropriate, subject to their investigation, to pursue my claims on a contingent fee basis and for counsel to advance the costs of the case, with no attorneys fee owing except as may be awarded by the court at the conclusion of the matter and paid out of any recovery obtained and I also hereby declare the following as to the claims asserted under the law that:

Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

Plaintiff reviewed a copy of the complaint and is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

Plaintiff's transactions in *InvenSense, Inc.* security that is subject of this action during the Class Period are as follows:

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 4,545 | INVN | BUY | 9/22/14 | 22 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Please list other transactions on a separate sheet of paper, if necessary.

Plaintiff has sought to serve as a class representative in the following cases within the last three years:

None.

Plaintiff will not accept any payment serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 24 day of February, 2017

_____
Signature